# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Case No.  2:04-cr-00498-PMP-GWF |
| vs. ) | **FINDINGS & RECOMMENDATIONS** |
| DANNY DARNELL JONES, ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's Motion to Dismiss (#46), filed on August 14, 2006; the Government's Opposition to Defendant's Motion to Dismiss Indictment (#55), filed on August 25, 2006; and Defendant's Reply to Government's Opposition to Defendant's Motion to Dismiss (#57), filed on August 31, 2006.  The Court heard this matter on September 13, 2006.

Defendant Danny Darnell Jones moves to dismiss the indictment in this case on grounds that his right to a speedy trial have been denied in violation of the Speedy Trial Act, 18 U.S.C. § 3164, the Interstate Agreement on Detainers Act (IADA) and the Fifth and Sixth Amendments of the United States Constitution.

## FACTS

The indictment in this case was filed on December 22, 2004 charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The Indictment alleges that on or about October 31, 2004, the Defendant, a previously convicted felon, was in possession of 9 mm firearm.  A warrant for Defendant's arrest on the Indictment was issued on

1  December 22, 2004 and was received by the United States Marshall on that date. *Defendant's Motion*
2  *(#46), Exhibit* "1" and "1-A".
3       According to Defendant's Motion, he was arrested in Las Vegas, Nevada on October 31, 2004 on
4  the charge of ex-felon in possession of a firearm and also on an outstanding warrant for an absconding
5  charge from the State of California. Following his arrest, Defendant was held in the Clark County
6  Detention Center until December 9, 2004 when he was transferred to the custody of California
7  authorities. Defendant was thereafter held in custody on California state parole violation charges until
8  January 12, 2005 when he was released.
9       On February 2, 2005, Defendant was again arrested by California law enforcement officers on a
10 local California warrant pursuant to California Penal Code § 270 for failure to pay child support.[1] The
11 Jail Custody Record indicates that Defendant was booked into the Los Angeles County Jail on the
12 misdemeanor warrant for which there was a $15,000 bail amount and on the subject federal charge for
13 felon in possession of a firearm for which there was no bail. *Motion (#46), Exhibit* "2". On February 3,
14 2005, an Order for Release was entered in the Superior Court of California, Los Angeles County that
15 Defendant be released on the penal code charge. *Motion (#46), Exhibit* "3". It appears, however, that
16 the California authorities continued to hold Defendant in custody on a parole violation charge. Although
17 no specific record of this parole hold has been submitted to the Court, Defendant has attached to his
18 Motion a State Parole Release which indicates that on March 1, 2005 the state parole hold was removed
19 and Defendant was instructed to report to the parole office on the day after his release. *Motion (#46),*
20 *Exhibit* "4." It therefore appears that as of March 1, 2005, Defendant was no longer being held in
21 custody by the California authorities on any state charges.
22      On March 9, 2005, the Government filed a petition for writ of habeas corpus *ad prosequendum*
23 in this case stating that Defendant was in the custody of the Los Angeles County Sheriff's Department
24 which had consented to the temporary release of the Defendant so that he could be present for his initial
25 appearance and arraignment and plea on the indictment in this district on April 8, 2005, and for any

---

[1] Defendant claims that the officers who arrested him stated he would not have been arrested on the penal code violation, but for the existence of the federal arrest warrant on the Indictment.

1  proceedings thereafter. Exhibit "5" to Defendant's motion indicates that there was some communication
2  between the Los Angeles County Sheriff's Department and the United States Attorney or the United
3  States Marshal on March 10, 2005 that a writ was being obtained for Defendant's release to the custody
4  of the United States. The order granting the writ was filed on March 24, 2005. *See Petition for Writ of*
5  *Habeas Corpus ad prosequendum, Order* (#4).

6  According to a March 30, 2005 Memorandum sent by the United States Marshal Service to the
7  Los Angeles County Jail, Defendant and another jail prisoner were scheduled to be picked up by the
8  Marshal on April 1, 2005. *Motion (#46), Exhibit* "6". For reasons that are not clear, Defendant was not
9  picked up by the United States Marshal from the Los Angeles County Jail on April 1, 2005. An undated
10 memorandum apparently from the Los Angeles County Jail Records Watch Deputy to the Marshal's
11 Lead Detention Enforcement Officer states that Defendant was scheduled for pick-up on April 1, 2005,
12 "but for some unknown reason was not." *Motion (#46), Exhibit* "6". The memo requested that the
13 Marshal's office call and arrange for pick-up through the jail extradition unit.

14 At the hearing in this matter, the Deputy United Marshal for the District of Nevada, Greg Dewey,
15 testified that in July 2006, he reviewed the Marshal's Office's file in this case and corresponded with his
16 counterpart in the Central District of California. According to Marshal Dewey, the Marshal's office in
17 Los Angeles told the Marshal's office in Las Vegas that the Los Angeles County Jail refused to release
18 Defendant on April 1, 2005 because they were not through with him yet. Marshal Dewey testified that
19 based on his investigation, the other inmate who was scheduled for pick-up by the Marshal's service on
20 that date was picked up. Marshal Dewey testified that Defendant was subsequently picked up from the
21 Los Angeles County Jail (Sheriff's Department) by the Bureau of Alcohol, Tobacco and Firearms (ATF)
22 on July 19, 2005. Marshal Dewey testified that the legal basis for the ATF to pick up Defendant was the
23 warrant for his arrest on the indictment that was issued on December 22, 2004. Marshal Dewey testified
24 that Defendant was not picked up pursuant to the writ of habeas corpus *ad prosequendum* which was
25 never executed and which had expired by the time that the ATF picked up Defendant on July 19, 2005.

26 Defendant was taken before a United States Magistrate Judge in the Central District of California
27 on July 19, 2005 for an initial appearance in that district, at which time he was ordered to be transferred
28 to the District of Nevada. The Magistrate Judge in the Central District also ordered that Defendant be

1  detained as a risk of nonappearance. (#5).  The Defendant's initial appearance and arraignment and plea
2  on the Indictment before the Magistrate Judge in the District of Nevada occurred on August 5, 2005.
3  The Federal Public Defender's Office was appointed to represent Defendant and he entered a not guilty
4  plea to the indictment.  The Court ordered that the Defendant be detained pending trial in this case on the
5  grounds that he poses a danger to the community and a risk of non-appearance.  The Defendant has been
6  held in custody in this district since his arraignment on August 5, 2005.

7        Trial in this case was initially set for September 27, 2005.  There have been several continuances
8  of the trial pursuant to stipulations to continue entered into by the Defendant's counsel and counsel for
9  the Government.  The first stipulation and order to continue trial was entered on September 26, 2005 and
10 the trial was continued to December 5, 2005.  *Stipulation and Order* (#13), filed on September 26, 2005.
11 The second stipulation and order to continue trial was entered on November 30, 2005 and the trial was
12 continued to February 6, 2006.  *Stipulation and Order* (#17), filed on December 9, 2005.   The third
13 stipulation and order to continue trial was entered on January 26, 2006 and the trial was continued to
14 May 22, 2006.  *Stipulation and Order* (#20), filed on January 26, 2006.

15       On March 17, 2006, the Court granted Defendant's and the Federal Public Defender's request
16 that the Federal Public Defender's office be relieved of representing the Defendant in this action.  The
17 basis for Defendant's and his counsel's request was a difference of opinion between them regarding the
18 filing of the instant motion.[2]  On March 17, 2006, the Court appointed CJA panel counsel to represent
19 Defendant in this case.

20       The fourth stipulation and order to continue trial was entered on May 10, 2006 and the trial was
21 continued to August 14, 2006.  *Stipulation and Order* (#32), filed on May 10, 2006.  The fifth stipulation
22 and order to continue trial was entered on July 12, 2006 and the trial was continued to October 16, 2006
23 *Stipulation and Order* (#34), filed on July 12, 2006.  On July 25, 2006, Defendant's appointed CJA
24 panel counsel moved to withdraw as Defendant's counsel, in part, due to disagreement with Defendant

---

26    [2]While represented by the Federal Public Defender's Office, Defendant filed a motion in proper
27 person to dismiss the indictment for the reasons set forth in the instant motion.  *Motion* (#23), filed on
   February 23, 2006.  On March 30, 2006, the Court denied Defendant's motion "without prejudice to
28 counsel for Defendant to renew the same if appropriate."  *Order* (#28), filed March 30, 2005.

regarding the filing of the instant motion, and Defendant requested that he be permitted to represent himself in this case. On July 27-28, 2006, after canvassing Defendant and his counsel regarding counsel's request to withdraw and Defendant's desire to represent himself, the Court granted said requests and appointed standby counsel to assist Defendant in this case. Defendant thereafter filed the instant Motion to Dismiss (#46) on August 14, 2006.

## DISCUSSION

Defendant raises several grounds in support of his Motion. Defendant contends that his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) has been violated. Second, Defendant alleges that his right to a speedy trial within the time limits provided in the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. App. § 2, has been violated. Third, Defendant alleges that his right to a speedy trial under the Sixth Amendment of the United States Constitution has been violated. Finally, Defendant also appears to allege that his right to due process of law under the Fifth Amendment to the United States Constitution has been violated.

**1.   Whether Defendant's Rights Under the Speedy Trial Act Were Violated.**

The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), states in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (or making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

In this case, Defendant's initial appearance, arraignment and plea in the District of Nevada occurred on August 5, 2005. The seventy day time period under the Speedy Trial Act commenced from that date. *United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir. 1994). Defendant's trial was thereafter set for September 27, 2005. The trial date was thereafter continued pursuant to stipulations by Defendant's counsel and counsel for the Government and pursuant to Findings of Fact, Conclusions of Law and Orders of the Court entered in accordance with 18 U.S.C. § 3161(h)(8)(A) and (B), which periods of delay are excluded in computing the time in which the trial must commence.

As the Government states in its Opposition (#55), page 2, Defendant's grievance regarding his detention in the state facility prior to his initial appearance and arraignment on the indictment is not

relevant to the time limits for commencing trial under 18 U.S.C. § 3161(c)(1). Although not specifically raised in Defendant's Motion, his argument that his rights under the Speedy Trial Act were violated and the indictment should be dismissed may be predicated on 18 U.S.C. § 3161(j)(1). This subsection of the Act provides that if the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly undertake to obtain the presence of the prisoner for trial or cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner of his right to demand trial. Even if Defendant's Motion is construed as being brought under subsection (j)(1), a violation of that provision is not grounds for dismissal of the indictment under 18 U.S.C. § 3162(a). *See United States v. Valentine*, 783 F.2d 1413, 1415-16 (9th Cir. 1986).

Defendant's Motion also vaguely invokes the provisions of 18 U.S.C. § 3161(b) which requires that the indictment be filed within 30 days from the date the defendant is arrested. Defendant was arrested by Nevada state authorities on October 31, 2004 and was thereafter transferred to the custody of California state authorities. There is no evidence that federal officials were even involved in his initial arrest. The 30-day time period under subsection (b) is not triggered unless there is a federal arrest. *United States v. Johnson*, 953 F.2d 1167, 1172 (9th Cir. 1992). Therefore, Defendant's argument under 18 U.S.C. § 3161(b) is also without merit.

The Court finds that Defendant's rights under the Speedy Trial Act were not violated and his Motion to Dismiss on this basis should be denied.

**2.    Whether the Indictment Must Be Dismissed Pursuant to the Interstate Agreement On Detainers Act.**

Defendant argues that the Indictment in this case must be dismissed pursuant to the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. App. § 2. The Government argues, however, that a detainer was never lodged against Defendant by the United States and, therefore, the provisions of the IADA never became applicable. In this regard, the Government relies on *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), in which the Supreme Court held that a federal writ of habeas corpus *ad prosequendum* is not a detainer within the meaning of the IADA and does not trigger the application of the Agreement. *See also United States v. Woods*, 775 F.2d 1059 (9th Cir. 1985),

stating that pursuant to *Mauro* the federal government is not required to proceed pursuant to the IADA when it wishes to obtain custody of a defendant who is in the custody of another member to the Agreement. The government may forego lodging a detainer and seek to obtain custody by a writ of habeas corpus *ad prosequendum*.

In *Mauro*, the defendants were produced to the federal authorities pursuant to a writ of habeas corpus *ad prosequendum* and were taken to federal court for their initial appearances and arraignments. The defendants were thereafter returned to state custody prior to their federal trial. Defendants argued that their transfer back to state custody before their federal trial violated the "anti-shuttling" provisions of Article IV(e) of the IADA. The Court rejected these arguments on the grounds that unlike a writ of habeas corpus *ad prosequendum* issued by a federal district court, a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. A detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the receiving state in order to obtain the prisoner. The IADA was adopted by the states, including the United States, to correct the abuses associated with delays in acting on detainers by requiring that the receiving state take action within a specified time after the detainer is lodged to obtain custody of the defendant and bring him to trial, and to also prohibit the receiving state from transferring the prisoner, without his consent, back to the custody of the sending state before his trial.

Although the IADA contains no definition of the word "detainer" in holding that the federal writ of habeas corpus *ad prosequendum* does not constitute a detainer within the meaning of the IADA, *Mauro* states:

> Because writs of habeas corpus *ad prosequendum* issued by a federal court pursuant to the express authority of a federal statute are immediately executed, enactment of the Agreement was not necessary to achieve their expeditious disposition. . . . Contrary to the Court of Appeals in No. 76-1596, it is not necessary to construe "detainer" as including these writs in order to keep the United States from evading its duties under the Agreement. When the United States obtains state prisoners by means of a writ of habeas corpus *ad prosequendum*, the problems that the Agreement seeks to eliminate do not arise; accordingly the Government is in no sense circumventing the Agreement by means of the writ. We therefore conclude that a writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the Agreement.

1  *Mauro, supra,* 436 U.S. 360-61.

2  In the companion case, *United States v. Ford,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the federal officials lodged a detainer against a defendant who was in state custody by means of sending the federal bank robbery warrant to the state prison authorities where defendant was serving a state sentence. The government thereafter obtained defendant's appearance in federal court for arraignment on the indictment pursuant to a writ of habeas corpus *ad prosequendum*. After defendant entered his plea, he was returned to state prison during which time his trial in federal court was continued on several occasions either at the request of the government or on the court's own initiative. Because of the existence of the detainer, defendant was denied furlough privileges while in state custody awaiting his federal trial. Although the Court in *Mauro* held that a writ of habeas corpus *ad prosequendum* does not constitute a detainer under the IADA, *Ford* held that once the federal government avails itself of the provisions of the IADA by lodging a detainer against the defendant with state authorities, the government becomes subject to the Agreement. In that circumstance, a subsequently issued writ of habeas corpus *ad prosequendum* will be treated as a written request for temporary custody of the defendant within the meaning of the IADA.

There is no evidence that federal officials, either formally or informally, lodged a detainer against Defendant with the Los Angeles County Sheriff's Department or other California authorities. Marshal Dewey testified at the hearing that the United States Marshal's Service never lodged a detainer against the Defendant. Marshal Dewey testified that the Marshal's Service uses certain forms to lodge detainers.[3] He also testified that on occasion federal agencies may lodge a detainer against a defendant held in state custody by faxing or sending a copy of the federal arrest warrant to the state facility holding a defendant. No evidence has been presented, however, that any federal agency, or in particular the ATF, lodged a detainer against Defendant.

. . .

. . .

---

[3]*See United States v. Johnson*, 196 F.3d 1000 (9th Cir. 1999), which discusses the Marshal's Service's detainer forms.

1    If a detainer is lodged, Article III(c) of IADA requires that the person having custody of the
2 prisoner promptly inform him of the source and contents of any detainer lodged against him and also
3 inform him of his right to make a request for final disposition of the indictment, information or
4 complaint on which the detainer is based.  Article III(a) requires that the prisoner be brought to trial
5 within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate
6 court a request for final disposition of the indictment, information or complaint.  Article III(d) further
7 requires that the official having custody of the prisoner to forthwith notify the prosecuting officer and the
8 appropriate court of the prisoner's request for final disposition.  *See United States v. Johnson*, 196 F.3d
9 1000 (9th Cir. 1999).  It is possible that the state authorities could have failed to inform Defendant of the
10 existence of a federal detainer against him and of his right to request a speedy trial under the provisions
11 of the IADA.  The absence of any such evidence, however, is also consistent with the conclusion that no
12 federal detainer was lodged against the Defendant such as to bring this case within the requirements of
13 the IADA.
14    The evidence establishes that on March 28, 2005 a writ of habeas corpus *ad prosequendum* was
15 issued and that the Marshal made arrangements with the Los Angeles County Sheriff's Department to
16 pick up Defendant from the Los Angeles County Jail on April 1, 2005 pursuant to the writ.  The record
17 is unclear why Defendant was not picked up by the Marshal's Service on that date.  Marshal Dewey
18 testified, based on hearsay information obtained from the Marshal's Office in the Central District of
19 California, that when the Marshal attempted to pick up the Defendant on April 1, 2005, the Jail
20 authorities advised the Marshal that they would not release Defendant because "they were not through
21 with him."   The records submitted by Defendant indicate, however, that he was no longer being held on
22 state charges on April 1, 2005.  According to Exhibit "7" to Defendant's Motion (#46), the Los Angeles
23 County Sheriff's Department sent a memo to the Marshal's Service stating that Defendant was scheduled
24 for pick-up on April 1, 2005, but that for some reason Defendant was not picked up.  The memo
25 requested that the Marshal's Service call and make arrangements to pick up Defendant.  Marshal Dewey
26 did not testify whether the Marshal's Service received the memorandum attached to Defendant's Motion
27 as Exhibit "7".  Nor did he indicate that the Marshal's Service made any subsequent effort after April 1,
28 2005 to pick up the Defendant so that he could be brought to the Court for his initial appearance and

arraignment on the indictment. According to Marshal Dewey, based on his review of the Marshal's records, Defendant was picked up from the Los Angeles County Jail on July15, 2005 by the ATF pursuant to the federal arrest warrant.

Thus, contrary to the Supreme Court's statement in *Mauro, supra,* the writ of habeas corpus *ad prosequendum* issued for Defendant's custody in this case did not have the immediate effect contemplated by the writ. It also appears that Defendant may have been held in custody by the Los Angeles County Jail after March 1, 2005 absent any state law grounds for holding him in custody. There is, however, no evidence that federal authorities lodged a detainer against the Defendant which made the provisions of the IADA applicable. Accordingly, the Court finds that Defendant was not denied his right to a speedy trial under the provisions of the IADA.

   **3.**  **Whether Defendant's Sixth Amendment Right to A Speedy Trial Was Violated.**

"The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy a right to a speedy trial." *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993), quoting *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Speedy trial challenges are subject to a four part inquiry governed by *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Those four factors are: (1) whether the delay before trial was uncommonly long, (2) whether the government or the defendant is more to blame for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice because of the delay. *United States v. Beamon, supra, citing Doggett,* 505 U.S. at 651, 112 S.Ct. at 2690; *United States v. Turner*, 926 F.2d 883, 889 (9th Cir.), *cert. denied,* 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).

As the Court in *Doggett* held, the first factor, delay, is analyzed in two steps. To trigger a speedy trial inquiry, the defendant must first show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. If this threshold is not met, then the court does not proceed further to analyze the *Barker* factors. If the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and the acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief. *Doggett* noted that lower courts have generally found post-accusation delay "presumptively prejudicial" at least as it approaches one year. *Doggett, supra,*, 505 U.S. at 654, n.1. In

1   *Beamon*, the court cited a Second Circuit decision, *United States v. Vassell,* 970 F.2d 1162, 1164 (2d.
2   Cir.), *cert. denied* 506 U.S. 1009, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992), which suggests that there is
3   general consensus of about eight months.  In *United States v. Tanh Huu Lam,* 251 F.3d 852, 856 (9th
4   Cir. 2001), the court also stated that in this circuit the court has found that a delay of six months in a case
5   involving a single count of firearms possession by a convicted felon constitutes a "borderline case" for
6   "presumptively prejudicial" delay.  *See United States v. Valentine,* 783 F.2d 1413 (9th Cir.1986).  In this
7   case, Defendant was indicted on December 22, 2004 and his trial is presently scheduled to commence on
8   October 16, 2006.  The length of delay in this case, therefore, passes the threshold for "presumptively
9   prejudicial" delay to require the Court to evaluate the other *Barker* factors.

10   The Court therefore turns to the second *Barker* factor regarding whether the Government or the
11   Defendant is more to blame for the delay and whether the Government was guilty of negligence or more
12   serious misconduct in failing to diligently obtain Defendant's custody so that he could be arraigned on
13   the indictment and brought to trial.  In *Doggett, supra*, there was an extraordinary delay of eight years
14   between the indictment and defendant's arrest.  The defendant, who was unaware of the indictment, left
15   the United States shortly after it was filed.  The government subsequently learned that defendant was in
16   custody in Panama and requested that Panama expel the defendant to the United States once the Panama
17   proceedings had run their course.  Instead, Panama released defendant without notifying the United
18   States.  Defendant first went to Columbia and then returned to the United States two and half years after
19   the indictment.  Defendant, allegedly still ignorant of the indictment, settled in the United States.  During
20   the ensuing years, the government made no attempt to determine defendant's whereabouts until the
21   Marshal's Service ran a credit check on persons subject to outstanding warrants and located defendant
22   six years after he had returned to the United States and eight and one-half years after the indictment was
23   filed.  Based on this record, the Court affirmed the district court's finding that the government was
24   negligent in failing to diligently pursue defendant's arrest on the indictment.

25   In this case, a much shorter period of approximately seven months passed between Defendant's
26   indictment and his initial appearance and arraignment on August 5, 2005.  At the time the indictment
27   was filed, Defendant was apparently still in the custody of the Los Angeles County Sheriff following his
28   arrest in Las Vegas on October 31, 2004 and his transfer to the custody of California authorities on

1    December 9, 2004.  Defendant remained in state custody until his release on January 12, 2005.

2    Defendant claims that he was unaware of the existence of the federal indictment and arrest warrant until

3    his arrest by state authorities on February 2, 2005.

4           No information has been provided as to when the Government first learned that Defendant was

5    in state custody following his arrest on February 2, 2005.  The Government was aware by early March,

6    2005 that Defendant was in the Los Angeles County Jail, and on March 9, 2005, the Government filed

7    the petition for writ of habeas corpus *ad prosequendum* to obtain the temporary release of Defendant so

8    that he could be present for his initial appearance and arraignment on April 8, 2005.  Pursuant to this

9    writ, the United States Marshal's Service arranged to pick up Defendant from the Los Angeles County

10   Jail on April 1, 2005.  As discussed previously, Marshal Dewey gave hearsay testimony that the United

11   States Marshal was informed by the County Jail on April 1, 2005 that it refused to release the Defendant.

12   Marshal Dewey also testified that the Marshal picked up another prisoner on April 1, 2005 which

13   provides some credence to the Government's assertion that the Marshal's Service did not cancel the

14   pick-up or simply fail to retrieve the Defendant.

15          Defendant's Exhibit "7", however, indicates that the Sheriff's Department sent a follow-up

16   memo to the Marshal's Service requesting that it call and arrange to pick up Defendant.  There is no

17   evidence that the Marshal made further efforts to pick up Defendant after April 1, 2005 and the

18   Government did not seek another writ to obtain custody of the Defendant.  Defendant claims that there

19   were numerous other communications between the Los Angeles County Jail and federal authorities in

20   regard to having the Government take custody of the Defendant.  Other than Defendant's assertion,

21   however, no evidence has been presented to confirm such communications.  Defendant was finally taken

22   into custody by the ATF on July 19, 2005 for his initial appearance before the United States Magistrate

23   in the Central District of California.

24          On this record, the Court finds that the Government was negligent in failing to obtain custody of

25   the Defendant from the Los Angeles County Jail or Sheriff's Department after April 1, 2005 until he was

26   arrested by the ATF and taken into federal custody on July 19, 2005.  Arguably, there may have also

27   been some lack of diligence by the Government before April 1, 2005 in seeking to obtain custody of

28   Defendant to present him for an initial appearance.  The Government's delay in obtaining custody of

1  Defendant, however, does not rise to the level of bad faith.  The Government made an effort to obtain
2  Defendant's custody through the writ of habeas corpus *ad prosequendum,* and it appears that the failure
3  to secure his custody on April 1, 2005 was caused by miscommunication within the Sheriff's
4  Department or between the Sheriff's Department and the Marshal's Service.  The subsequent failure of
5  the Government to obtain Defendant's custody until July 19, 2005 appears to be the result of lack of
6  diligence rather than a conscious or deliberate decision to delay obtaining custody of the Defendant.

7  Defendant cannot be charged with any responsibility for the delay between his indictment on
8  December 22, 2004 and his initial appearance in this District on August 5, 2005.  There is no evidence
9  that Defendant knew of the indictment prior to his arrest on February 2, 2005, and he cannot be faulted
10 for the Government's failure to promptly obtain his custody from state authorities so that he could be
11 present for an initial appearance and arraignment.

12 Under the third *Barker* factor, the Court is required to consider whether, in due course, the
13 Defendant asserted his right to a speedy trial.  Although a defendant's failure to demand a speedy trial
14 does not constitute a waiver of his Sixth Amendment right, it is one factor to be considered in regard to
15 whether he has been deprived of his right to a speedy trial.  *Barker v. Wingo, supra*, 407 U.S. at 528.  At
16 Defendant's initial appearance in this District on August 5, 2005, the Federal Public Defender was
17 appointed to represent him.  Trial was thereafter set for September 27, 2005.  Defendant's Public
18 Defender thereafter entered into three stipulations with the Government to continue the trial date which
19 were granted by the Court.  In February 2006, Defendant filed his own motion in proper person to
20 dismiss the indictment based on the alleged denial of his right to a speedy trial.

21 In March 2006, Defendant's Public Defender was permitted to withdraw because of the
22 disagreement between her and Defendant regarding the appropriateness of filing the instant motion.  On
23 March 17, 2006, the Court appointed new counsel to represent Defendant and that counsel also entered
24 into two subsequent stipulations with the Government to continue the trial date that were approved by
25 the Court, the last of which set trial for its present date of October 16, 2006.  Defendant's second counsel
26 was also permitted to withdraw on July 28, 2006, again in part due to the disagreement between counsel
27 and the Defendant regarding the filing of the instant motion.  Defendant's request to represent himself in
28 this matter was granted on July 28, 2006 and he thereafter filed the instant Motion.

1   In *Barker v. Wingo, supra,* the Court held that the defendant's counsel's agreement to postponements of the trial date was a significant factor weighing against defendant's claim that his right to a speedy trial was denied. In *United States v. Tanh Huu Lam*, 251 F.3d 852, 857-58 (9th Cir. 2001), the court held that the responsibility of defendant's counsel for delays or continuances rightfully accrues to the defendant. The court stated that although there are basic rights which the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has – and must have – full authority to manage the conduct of the trial. The court in *Tanh Huu Lam* further noted that the defendant never moved to substitute counsel or dismiss the indictment prior to trial. The court also found that the defense counsel's requests for the continuances were legitimate and benefitted the defendant by providing counsel additional time to prepare.

In this case, both of Defendant's attorneys stipulated to continuances of the trial date and represented in the stipulations that Defendant agreed to the continuances. Although there was disagreement between Defendant and his former counsel regarding their decisions not to file a motion to dismiss the indictment, there is no evidence that Defendant objected to continuing the trial date. It is apparent that, contrary to the judgment of his attorneys, Defendant wanted to litigate his motion to dismiss before proceeding to trial. The Court finds that former counsel's refusal to file the instant motion to dismiss or their stipulations to continue the trial on his behalf were not unreasonable and does not support a finding that prior counsel was incompetent. The adverse weight against Defendant because of his agreement to the continuances of the trial is arguably moderated, to some degree, based on his disagreement with his counsel regarding the filing of his motion to dismiss. There is, however, no information that the Government sought any of the continuances of the trial date.

The fourth factor under *Barker* is whether Defendant suffered prejudice because of the delay. *Barker* states that prejudice should be assessed in light of the interests of defendants which the speedy trial right was designed to protect. The Court identified three such interests: (i) to prevent oppressive pre-trial incarceration, (ii) to minimize anxiety and concern of the accused, and (iii) limit the possibility that the defense will be impaired. *Barker* states that this last interest is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Barker v. Wingo, supra,* 407 U.S. at 532. *See also Doggett v. United States, supra,* 505 U.S. at 654.

*Doggett* noted that proving that unreasonable delay actually impaired defendant's ability to present a defense is difficult because delay may work to the benefit or detriment of either side because of lost witnesses, failed memory or other circumstances. *Doggett* stated that such prejudice must be evaluated in light of whether the delay was caused by official negligence or bad faith. In regard to delay caused by official negligence, the Court stated that "[w]hile not compelling relief in every case where bad-faith would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett, supra,* 505 U.S. 657. The Court in that case found no difficulty in holding that the government's six year delay in arresting defendant after he returned to the United States was sufficient to find that defendant's defense was prejudiced by the delay and that the indictment should be dismissed.

Here, the Defendant suffered prejudice because he was detained in state custody prior to his arraignment for a period longer than would have been necessary if the Government had acted diligently to obtain his custody. Although Defendant reasonably should have been taken into federal custody prior to August 5, 2005, it is likely that Defendant would still have been ordered detained by the federal court if his initial federal appearance had occurred earlier.[4] Given the length of the delay in presenting the Defendant to the Court for arraignment, which was caused by negligence rather than a deliberate or bad faith delay by the Government, the Court finds that this delay was not sufficient to hold that Defendant's right to a speedy trial under the Sixth Amendment was violated or that the indictment should be dismissed.

The delay caused by the Government's negligence in obtaining custody of Defendant so that he could be arraigned on the indictment lasted approximately four months from when the Defendant reasonably should have been taken into federal custody and brought before the Court to be arraigned. If

---

[4]The Sheriff's Department should have released Defendant from state custody once there were no state charges pending against him. There is no evidence, however, that the Government knew that the Sheriff's Department kept Defendant in custody solely because of the federal indictment and warrant which, as the Court has found, was not lodged as a detainer. Therefore, while Defendant may have a legitimate complaint against the Los Angeles County Sheriff's Department for wrongfully detaining him after March 1, 2005, the Government is not responsible for this allegedly wrongful conduct.

1  Defendant had exercised his right to a speedy trial, he would have proceeded to trial on September 27,
2  2005.  The total length of time from indictment to trial, at that point, would have been nine months
3  which would have arguably been close to the borderline of presumptive prejudicial delay.  *See United*
4  *States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).  The trial date was thereafter postponed pursuant
5  to stipulations made by Defendant's counsel and there is no evidence that these continuances were
6  sought at the behest of the Government.  Considering all of the factors and circumstances, the delay in
7  this case was not so long that prejudice to Defendant's ability to defend the case should be presumed.
8       Defendant has not demonstrated to the Court that the delay in this matter has caused actual
9  prejudice in Defendant's ability to present a defense to the indictment.   At the hearing in this matter,
10 Defendant claimed for the first time that a witness who will support his defense to the charge of being an
11 ex-felon in possession of a firearm is no longer available to testify on his behalf.  The Court finds
12 Defendant's argument in this regard, which was not presented in his Motion, is not credible.  The Court
13 therefore, finds that there is no evidence that Defendant's ability to defend against the charge against him
14 has been actually prejudiced.
15       **4.     Whether Defendant's Due Process Rights Under the Fifth Amendment Have Been Violated.**
16
17      Defendant does not clearly assert, nor is there any basis to find, that there was any excessive pre-
18 indictment delay in this case.  As set forth above, Defendant was arrested by local or state authorities in
19 Las Vegas on October 31, 2004, at which time he was allegedly found to be in possession of a firearm.
20 The indictment in this case was filed on December 22, 2004, less than two months after the alleged
21 offense occurred.  On its face, there does not appear to be any excessive delay between the commission
22 of the alleged offense and the filing of the indictment.  To establish a Fifth Amendment violation, the
23 defendant must show that he suffered "actual non-speculative prejudice from the delay and that the
24 delay, when weighed against the government's reasons for it, offends those fundamental conceptions of
25 justice which lie at the base of our civil and political institutions."  *United States v. Gregory*, 322 F.3d
26 1157, 1165 (9th Cir. 2003).  Where the delay results from the government's negligence, rather than
27 reckless or intentional governmental misconduct, the showing of actual prejudice must be even greater.
28 Here, the period of pre-indictment delay was not excessive.  To the extent that the post-indictment delay

is analyzed under the Fifth Amendment, the Court again concludes that the delay prior to arraignment resulted from the Government's negligence and not from reckless or intentional misconduct.  Defendant has not shown actual prejudice to his defense that would support a dismissal of the indictment under the Fifth Amendment.

## CONCLUSION

The Court concludes that Defendant's rights under the Speedy Trial Act were not violated.  The Court further finds that the Interstate Agreement on Detainers Act is inapplicable in this case because no federal detainer was lodged against the Defendant.  The Court further finds that Defendant was subjected to delay between his indictment on December 22, 2004 and his arraignment on August 5, 2005 and suffered some prejudice through a longer period of pre-trial incarceration than would likely have occurred had the Government more diligently sought to obtain custody from the state officials and presented him for his initial federal appearance and arraignment.  The delay caused by the Government was the result of negligence, however, and was not intentional or done in bad faith.   Subsequent to his arraignment, the continuances of the trial date were made with the consent of the Defendant and his counsel.   The length of delay in this case was not so substantial or the result of egregious governmental conduct to constitute a violation of Defendant's Sixth Amendment rights.  Defendant's right to due process under the Fifth Amendment was not violated.

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss (#46) be DENIED.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of

. . .

. . .

the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 21st day of September, 2006.

_____
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE