UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.  2:04-cr-00498-PMP-GWF |
| ) | |
| vs. ) | **FINDINGS & RECOMMENDATIONS** |
| ) | |
| DANNY DARNELL JONES, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's Motion to Suppress (#76), filed October 12, 2006; the Government's Opposition to Motion to Suppress (#83), filed October 20, 2006; Defendant's Reply to Government's Opposition to Motion to Suppress (#87), filed October 26, 2006; and Defendant's Supplement to Defendant's Reply to Government's Opposition to Motion to Suppress (#88), filed on October 30, 2006.

Also before the Court is Defendant's Motion to Suppress Photographs (#85), filed on October 24, 2006 and the Government's Opposition to Motion to Suppress Photographs (#90), filed November 1, 2006; and Defendant's Motion for Reconsideration of Defendant's Motion to Re-Print Indictment to Strike Prejudicial Information (#75), filed on October 12, 2006.  The Court conducted a hearing on these motions on November 15, 2006.

**FACTS**

Defendant is charged with the crime of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1)and 924(a)(2) pursuant to an Indictment (#1) filed on December 22, 2004.  On October 31,

1   2004, the police allegedly responded to a telephone call from Peter Santiago, who resided at 8129 Finch
2   Feather Street, Las Vegas, Nevada.  Mr. Santiago reported that Defendant had beaten up his daughter,
3   Rachel Santiago and was locked in the bathroom with her.  After the police arrived at the residence,
4   Defendant allegedly refused to open the bathroom door for the officers, who then forced entry into the
5   bathroom and rescued Ms. Santiago.  The police allegedly recovered a loaded Intratec model AB10
6   "Tec-9" 9 mm pistol from the bathroom floor.  Defendant, who was identified at that time as D'ran
7   Lamont Johnson, was arrested on charges of first degree kidnaping with use of a deadly weapon, ex-
8   felon in possession of a firearm, battery/domestic violence, and failure to register as an ex-felon.
9         Following Defendant's arrest, he was interviewed at the Clark County Detention Center on
10  November 2, 2004 by Detective Jessica Flink, a detective in the firearms investigation unit of the Las
11  Vegas Metropolitan Police Department.  Ms. Flink testified at the evidentiary hearing that she went to
12  the Detention Center to interview Defendant about his possession of the firearm.  Detective Flink
13  recorded her interview with Defendant on audiotape.  Prior to questioning the Defendant, Ms. Flink
14  advised him that she was with the Police Department's Firearms Unit, that she was not there to interview
15  him about the specifics of the charges for which he was arrested, and that she was not going to put any
16  new charges on the Defendant.
17        Detective Flink advised Defendant of his *Miranda* rights.  According to the audiotape of the
18  interview, *Government's Exhibit 1,* Detective Flink advised Defendant that he had the right to remain
19  silent and that anything he said may be used against him in a court of law.  Detective Flink also advised
20  Defendant that he had the right to the presence of an attorney during questioning[1] and that if he was
21  unable to afford one, one would be appointed for him.  Detective Flink asked Defendant if he understood
22  his rights and he responded yes.
23        Prior to questioning, Detective Flink further informed the Defendant as follows:
24        Q.   Okay, now what I'm here specifically about is the gun.  What I do
              is ... the guns that are ever impounded for whatever reason, we
25            trace back and find out where they came from, like who had it all

---

[1] Although the transcript of the interview, *Government's Exhibit 2,* omits the word "questioning," the Court has listened to the audiotape and confirmed that Detective Flink informed Defendant that he had the right to the presence of counsel during questioning.

|   |   |
|---|---|
| 1 | the way back to who made it.  That's what we do.  So that's what I'm here to speak to you specifically on not the whole incident that you're here on today.  Where did you get that gun? |
| 2 |   |

*Government's Exhibit 2.*

The Court has listened to the audio disc of the recorded interview. *Government's Exhibit 1.* The transcript of the interview, *Government's Exhibit 2*, does not provide an exactly accurate statement of every spoken word on the audio recording. The above quoted transcript, with a few missing words, however, accurately states the statements made by Detective Flink.

In response to Detective Flink's question regarding where he got the gun, Defendant appeared to respond that he and his brother traded another gun for the subject firearm approximately two years earlier. The audio recording indicates that Defendant stated that he kept the firearm for protection. Defendant stated that the gun did not work and it just made a click sound. Defendant indicated that if he ever needed the gun, it was there and it would scare somebody, instead of him actually having to use it. Defendant also indicated that the gun was kept in storage. Defendant indicated that it was his intent to sell the gun and get some money for it. *See Government's Exhibit 2,* pages 2-5. After confirming to the Detective that he was the same person as Danny Jones, Defendant veered off into a disjointed discussion with the detective regarding his domestic situation with Rachel Santiago, his alleged paternity of her child, and his relationship with her parents. *Id.,* pages 5-20. Defendant was then asked from whom he got the gun. He responded that he obtained it from a "[y]oung white guy 22." *Id.,* page 20. Defendant further stated that he had not used the weapon in any crimes and again indicated that the gun had been sitting in storage for 16 to 18 months.

Detective Flink testified that during the interview, Defendant did not appear to have any difficulty in understanding or communicating with her and she described Defendant as being coherent during the interview. She testified that Defendant appeared to be aware of his surroundings and the fact that he was incarcerated at the time. Detective Flink testified that the Defendant was understandable to her and he appeared to be alert. She testified that Defendant did not appear to be in any pain or disoriented. Detective Flink testified that she did not have any information or any concern at the time of the interview that Defendant had any mental health issues of any degree. Detective Flink testified that she did not make any statement to Defendant that if he gave a statement, that no charges regarding the

1  firearm would be made or brought against him.  On cross-examination, Detective Flink testified that at
2  the time she interviewed Defendant, he was housed in the isolation unit.  She testified that the isolation
3  ward is not a "mental ward," and it appears from her testimony that she only learned that Defendant was
4  housed in the isolation unit after the interview.  She testified that when she went to the jail, she went to
5  the main desk and requested to see Defendant and he was brought to an interview room where she spoke
6  with him.  Detective Flink denied on cross-examination that she engaged in an interview or conversation
7  with Defendant for 10-15 minutes prior to turning on the tape recorder.  She testified that she turned the
8  recorder on before entering the interview room and that the entire interview was recorded.

9       In support of his Motion to Suppress, Defendant attached to his motion, and offered in evidence
10  at the evidentiary hearing, copies of the Clark County Detention Center Mental Health Progress records
11  regarding the jail nurse's interviews with him while he was incarcerated.  According to Defendant, these
12  records show that he was not mentally competent on November 2, 2004 to understand and validly waive
13  his *Miranda* rights.  *See Defendant's Exhibits 1* through *12*.  The Government argued that the records are
14  inadmissible regarding whether Defendant understood the *Miranda* warnings, and also argues that even
15  if the Court considers the records, they are not sufficient to show that Defendant did not understand the
16  *Miranda* warnings or validly waive his right to remain silent or that his statements to Detective Flink
17  were not voluntary.  The records submitted by the Defendant indicate that on October 31, 2004,
18  Defendant's mood was euthymic, his affect was flat, he was oriented to person, place, situation and time.
19  His thought process was also reported as coherent, tangential and vague.  Defendant reported to the
20  nurse that he was hearing voices.  Subsequent nurses' notes indicate that Defendant had paranoid
21  ideations.

## DISCUSSION

23     Defendant's Motion to Suppress (#76) argues that his statements to Detective Flink on
24  November 2, 2004 regarding his possession of the firearm should be suppressed on the grounds that he
25  was not mentally competent to waive his *Miranda* rights and to make a voluntary statement.
26  Additionally, Defendant argues that his statement should be suppressed because Detective Flink elicited
27  statements from him by stating that he was not going to be charged.
28  . . .

The Government has the burden of showing by a preponderance of the evidence that Defendant waived his *Miranda* rights or that his confession was voluntary. *United States v. Kelly*, 562, 564 (9th Cir. 1992), citing *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). *See also Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A voluntary statement is one that is the product of a rational intellect and free will. *Id.,* citing *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). No one factor is determinative. Instead the court must consider the "totality of the circumstances". *Id.* (citations omitted.) This includes both the characteristics of the accused and the details of the interrogation. *Id.*, citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2046, 26 L.Ed.2d 854 (1973).

In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the Court held that absent coercion by the police in eliciting a confession, a defendant's rights to due process and against self incrimination under the Fifth Amendment is not violated based solely on his alleged mental state at the time he confessed. Likewise, the Court held that defendant's waiver of his *Miranda* rights is not rendered invalid solely because of his mental condition where there is no evidence that the police engaged in any coercion or improper tactics to exploit his mental condition and extract a waiver and confession from him. The defendant in *Connelly* approached a police officer and, without prompting, stated that he had murdered someone and wanted to talk about it. Defendant was advised of his *Miranda* rights and confessed to murdering a young girl a year earlier. Shortly after making the confession, defendant told his public defender that "voices" had instructed him to confess to the crime. At the suppression hearing, defendant presented expert testimony that at the time of the confession, he was suffering from chronic schizophrenia and was in a psychotic state, and his confession was not the product of a free will. The Court held that this evidence, standing alone, was not sufficient to require suppression of Defendant's confession under the Fifth Amendment or pursuant to *Miranda.*

In *United States v. Kelley*, 953 F.2d 562 (9th Cir. 1992), the defendant allegedly began to go through heroin withdrawal during the interview with police officers. The court held, however, that the record showed that defendant was coherent and made intelligent statements to the officers before the adverse effects of withdrawal began to affect his understanding. The court held that the police did not engage in overreaching which rose to the level necessary to support a finding of police coercion. *See*

1  *also United States v. Rodriguez-Rodriquez*, 393 F.3d 849 (9th Cir. 2005), evidence showed the
2  defendant was going through mild or moderate drug withdrawal at the time he waived his *Miranda*
3  rights and made statements to police, but that he remained coherent and responsive to the officers.

4        In this case, Detective Flink testified that when she met with the Defendant in the Clark County
5  Detention Center, she was unaware of his alleged mental condition as reflected in the jail records
6  submitted by the Defendant. She testified that the Defendant was coherent and responsive during the
7  interview. At the time Detective Flink met with Defendant, he was being held on several charges,
8  including kidnaping, ex-felon in possession of a firearm, battery/domestic violence and failure to register
9  as an ex-felon. She advised Defendant that she wanted to interview him regarding the history of the gun,
10 i.e., when, where and from whom he obtained it and that she would not put new charges on the
11 Defendant. Detective Flink testified that as a result of the interview, she did not place any new charges
12 on the Defendant.

13       Prior to questioning the Defendant, Detective Flink advised him of his *Miranda* rights. It appears
14 from the audio recording and the transcript, *Government's Exhibits 1* and *2,* that Defendant understood
15 and responded to the Detective's questions concerning the gun, how long he possessed it, from whom he
16 obtained it and what use, if any, he made of it during the time it was in his possession. Although
17 Defendant and the Detective also engaged in a rambling and, to some degree, incoherent and confusing
18 discussion regarding his relationship with Ms. Santiago and her family, it appears that Defendant
19 understood and responded intelligently to the Detective's questions regarding the gun when she returned
20 to that subject later in the interview. The mental health records submitted by the Defendant indicate that
21 he reported hearing voices and was suffering from paranoia. The records, however, also indicate that the
22 Defendant was oriented to person, place, situation and time, and that his thought process was coherent,
23 but also tangential and vague. No expert testimony was presented regarding Defendant's mental state at
24 the time of the interview. Even considering the jail mental health records submitted by the Defendant,
25 the Court finds that they do not support the conclusion that his mental condition was such that his
26 statements to the Detective were not the product of a rational intellect and free will. The Court finds no
27 evidence that would support a finding that Detective Flink engaged in coercive tactics or other improper
28 tactics in conducting the interview.

In regard to Defendant's Motion to Suppress Photographs (#85), there is no significant dispute regarding the positions of Defendant and the Government. Defendant stated during the hearing that his Motion does not seek to suppress photographs of the weapon and the bathroom area where it was allegedly found. *See Government's Exhibits 9,10, 11, 12, 13, 14, 15* and *16*. Defendant, however, moves to suppress photographs of the alleged victim, Rachel Santiago, depicting the physical injuries she sustained in the alleged incident. *See Government's Exhibits 3, 4, 5, 6, 7,* and 8. The Government states that it has no intention, at the present time, to introduce the photographs of Ms. Santiago, but reserves its right to introduce them if Defendant "opens the door" for their relevancy and introduction.

Defendant is charged with the crime of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)and 924(a)(2). Photographs of the facial injuries allegedly sustained by Rachel Santiago are not directly relevant to that charge under Rules 401 and 402 of the Federal Rules of Evidence. The photographs of Ms. Santiago's alleged injuries should also be excluded under Rule 403 on the grounds that their relevancy, if any, is substantially outweighed by the danger of unfair prejudice to Defendant. The Court, therefore, recommends that photographs of Ms. Santiago's alleged injuries, *Government's Exhibits 3, 4, 5, 6, 7,* and 8, be suppressed and not admitted during trial unless Defendant presents testimony or raises an issue making the admission of the photographs relevant to the crime charged in the Indictment.

In regard to Defendant's Motion for Reconsideration of Defendant's Motion to Re-Print Indictment to Strike Prejudicial Information (#75), the Court was advised that the parties have executed a stipulation for trial stating that Defendant has previously been convicted of a felony. This stipulation will avoid the necessity of presenting evidence at trial of Defendant's prior felony convictions as an element of the crime of felon in possession of a firearm. Defendant's apparent concern is that jurors may review the indictment in the court file and be informed of the prior convictions alleged in the indictment. The danger of this occurring appears remote and can be addressed by the Court's instructions and admonishments to the jury. The Court, therefore, recommends that Defendant's Motion for Reconsideration of Defendant's Motion to Re-Print Indictment to Strike Prejudicial Information (#75) be denied.

. . .

## CONCLUSION

The Court finds that Defendant was properly advised of his *Miranda* rights prior to questioning on November 2, 2004 and that his waiver of his *Miranda* rights and his statements to the officer regarding the subject gun were voluntary.  Based on the Government's statements that photographs of Rachel Santiago will not be introduced in evidence unless Defendant raises an issue which makes their introduction relevant and admissible, the Court recommends that Defendant's Defendant's Motion to Suppress Photographs (#85) be granted in part and denied in part.  Based on the stipulation between the parties that Defendant has previously been convicted of a felony, the Court recommends denial of Defendant's Motion to Re-Print Indictment to Strike Prejudicial Information (#75).

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant Motion to Suppress (#76) be **denied.**

**IT IS FURTHER RECOMMENDED** that  Defendant's Motion to Suppress Photographs (#85) be **granted** as to photographs of Rachel Santiago, *Government's Exhibits 3, 4, 5, 6, 7,* and 8, unless Defendant presents testimony or raises an issue making the admission of the photographs relevant to the crime charged in the Indictment, and that it be **denied** as to the other photographs depicting the gun and the location where it was found and seized.  be suppressed and not admitted during trial.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Re-Print Indictment to Strike Prejudicial Information (#75) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of

. . .

. . .

. . .

1  the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United*
2  *Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).
3      DATED this 4th day of December, 2006.

                                                  _____
                                                  GEORGE FOLEY, JR.
                                                  UNITED STATES MAGISTRATE JUDGE